685 F.2d 708
 222 U.S.App.D.C. 258
 NEW SOUTH MEDIA CORPORATION, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION,
National Citizens Committee for Broadcasting, et al., RKO
General, Inc., Intervenors.
FUTURE BROADCASTING, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION,
National Citizens Committee for Broadcasting, et al., RKO
General, Inc., Intervenors.
GOLD COAST BROADCASTING, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION,
National Citizens Committee for Broadcasting, et al., RKO
General, Inc., Intervenors.
NEW SOUTH MEDIA CORPORATION, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of America,
National Citizens Committee for Broadcasting, et al., Intervenors.
 Nos. 80-2556, 80-2566, 80-2567 and 81-1084.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 27, 1982.
Decided Aug. 13, 1982.
 
 Herbert E. Forrest, Washington, D. C., with whom Robert Lewis Thompson, Steven Reed, Jeanne Davidson, Washington, D. C., were on the joint brief for appellants, Gold Coast Broadcasting, Inc. and Future Broadcasting in Nos. 80-2566 and 80-2567. Lewis I. Cohen, Washington, D. C., also entered an appearance for appellant, Gold Coast Broadcasting, Inc. in No. 80-2567.
 Robert L. White, was on the brief for appellant/petitioner New South Media Corp. in Nos. 80-2556 and 81-1084.
 Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D. C., with whom Stephen A. Sharp, Gen. Counsel, and L. Andrew Tollin, counsel, F.C.C., Washington, D. C., were on the brief for appellee in Nos. 80-2556, 80-2566, 80-2567, 81-1084. David J. Saylor and Linda L. Oliver, counsel, F.C.C., Washington, D. C., also entered appearances for appellee.
 Barry Grossman and Margaret G. Halpern, Attys., Dept. of Justice, Washington, D. C., also entered appearances for respondent, USA in No. 81-1084.
 J. Roger Wollenberg, Washington, D. C., with whom Joel Rosenbloom, W. Theodore Pierson, Harold David Cohen, William H. Fitz, Jack N. Goodman, Washington, D. C., William E. Willis and Yvonne S. Quinn, New York City, were on the brief, for intervenor, RKO General, Inc. in Nos. 80-2556, 80-2566, and 80-2567.
 Jeffrey H. Olson, Washington, D. C., was on the brief for intervenor National Citizens Committee for Broadcasting, et al. in Nos. 80-2556, 80-2566, 80-2567, and 81-1084.
 Before ROBINSON, Chief Judge, and TAMM and GINSBURG, Circuit Judges.
 Opinion for the Court filed by Circuit Judge GINSBURG.
 GINSBURG, Circuit Judge:
 
 
 1
 These appeals are pursued by parties who would supplant RKO General, Inc. (RKO) as licensee of four broadcast stations. New South Media Corporation (New South) seeks to replace RKO as licensee of WHBQ-TV, Memphis; Future Broadcasting, Inc. (Future) seeks authority to construct new stations[1] mutually exclusive with licenses held by RKO for KHJ (AM) and KRTH (FM), both in Los Angeles; Gold Coast Broadcasting, Inc. (Gold Coast) seeks authority to construct a new station mutually exclusive with RKO's license for KFRC (AM) in San Francisco. Had nothing unusual occurred, the Los Angeles and San Francisco licenses in issue would have expired, at the close of their three-year terms, on December 1, 1980, and the Memphis license would have run its course on August 1, 1982.[2] Prior to those dates, RKO would have filed license renewal applications and competing applications could have been presented.[3] The Federal Communications Commission (FCC or Commission) would then hold comparative hearings to determine which of the rival applicants would best serve the public interest. See 47 U.S.C. § 309(e); Ashbacker Radio Corp. v. FCC, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945).
 
 
 2
 But something extraordinary did occur. After proceedings that originated in 1965, in companion orders released June 6, 1980, a sharply divided FCC disqualified RKO as licensee of three of its sixteen broadcast stations: WNAC-TV (Boston); KHJ-TV (Los Angeles); and WOR-TV (New York). RKO General, Inc. (WNAC-TV), 78 F.C.C.2d 1; RKO General, Inc. (KHJ-TV), 78 F.C.C.2d 355; RKO General, Inc. (WOR-TV), 78 F.C.C.2d 357 (4-3 decisions). Thereafter, in the opinion and order before us for review, released November 26, 1980, the Commission decided to hold non-comparative evidentiary hearings to determine what action, if any, it should take against RKO's remaining thirteen stations. RKO General, Inc., 82 F.C.C.2d 291.
 
 
 3
 Rather than wait for each license term to expire in the ordinary way or call for early applications for renewals of RKO licenses not then close to expiration, both courses that would have opened the door to competing applicants, the FCC settled on another mode of proceeding. It reopened prior renewals. Those renewals, granted without challenge or hearings in the years 1977-1979, had been expressly conditioned on the outcome of the Boston, Los Angeles, and New York proceedings. 82 F.C.C.2d at 295 n.14. The Commission recognized that this procedural course, in contrast to others it might have selected, would "keep( ) the door closed for the time being to challenges by prospective competing applicants." Id. at 296. However, the FCC concluded that "the public interest need for clear resolution of RKO's qualifications outweighs the benefits of possibly having a choice of applicants at this stage for these 13 licenses." Id. at 310.
 
 
 4
 In the noncomparative proceeding the Commission ordered, RKO would be "permitted to present mitigating evidence," including but not limited to "evidence of meritorious programming on a station-by-station basis." Id. at 310, 318. The proceeding was to abide completion of "all court appeals in the Boston, New York, and Los Angeles cases." Id. at 318.
 
 
 5
 The court appeals have now been completed. This court, on December 4, 1981, affirmed the disqualification of RKO as a licensee of WNAC-TV in Boston, but held that KHJ-TV (Los Angeles) and WOR-TV (New York) must be treated in the same manner as RKO's other thirteen stations. RKO General, Inc. v. FCC, 670 F.2d 215, cert. denied, --- U.S. ----, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982). The Commission had supplied three independent grounds for disqualifying RKO in the Boston case; it concluded that the company had engaged in anticompetitive practices, knowingly filed false financial statements with the Commission, and lacked candor in its dealings with the FCC. Our decision rejected the first two grounds. "We affirm(ed) the Commission's decision that RKO lacked candor (in the Boston proceeding), but on a quite narrow ground that cannot automatically be applied to any other proceeding." 670 F.2d at 218.
 
 
 6
 In light of our opinion in RKO General, we ordered the Commission in the case at hand to inform the court whether it "still plan(ned) to hold a separate (non-comparative) proceeding for the designated thirteen stations, or whether it is now prepared to proceed in the context of license renewal proceedings." We further directed that, "(i)f the FCC's position is unchanged, both sides should be prepared to address the question whether deferral of consideration of new applications for the stations is justified." New South Media Corp. v. FCC (Order filed December 4, 1981).[4]
 
 
 7
 Despite this court's rejection of "most of the grounds that the FCC used to justify its denial of RKO's license renewals," 670 F.2d at 218, and the passage of time, which has brought all thirteen licenses beyond or very close to the end of their three-year terms,[5] the FCC adheres to its position that no competing applications for RKO's licenses should be entertained at this stage and that it should proceed, as planned, to a noncomparative hearing on the reopened 1977-1979 license renewals. We conclude that it is no longer reasonable, in view of the relevant statutory, judicial, and agency guideposts, to close out prospective competitors. Without purporting to direct the particular mode in which the Commission should now proceed, we vacate the order here under review to the extent that it suspends the right to file competing applications.
 
 I.
 
 8
 We set out below, preliminary to our discussion of pertinent decisional guideposts, the participants in this appeal and principal features of their respective positions.
 
 New South Media Corporation
 
 9
 New South, prospective competitor for RKO's Memphis television station, relies on a brief filed months before this court's RKO General decision. Three of its arguments have been overtaken by that decision. New South argued that immediate revocation of all RKO's licenses is the only appropriate sanction because "there is no basis in logic or in fact to conclude (RKO) is any better qualified (than it is in Boston) wherever it is a licensee." Brief for Appellant and Petitioner New South Media Corporation at SA-2.[6] Further, New South maintained, the Commission failed to distinguish on any nonarbitrary basis between the two television stations (in Los Angeles and New York) denied renewal on the heels of RKO's disqualification in Boston, and the thirteen other stations. In addition, New South urged, the FCC erred in allowing RKO to submit mitigating evidence in regard to the thirteen stations. As to these three contentions, it suffices to point to this court's explicit ruling in RKO General that
 
 
 10
 (e)ach of RKO's renewal applications arises in different contexts and presents different levels of complexity.... Similarly, individual stations have different broadcast histories and policies.... These stations (including, particularly, the Los Angeles and New York television stations) are entitled to appear directly before the Commission and to argue that they deserve different treatment than RKO's Boston station.
 
 670 F.2d at 237.[7]
 
 11
 New South's principal objection, however, survives our December 4, 1981, RKO General opinion. It is an attack, similar to the one made by Future and Gold Coast, on the FCC's late 1980 reopening of license renewals that had been granted RKO stations conditionally in 1977-1979; New South complains particularly that the FCC's reopening decision requires potential competitors to wait indefinitely to be heard. Future and Gold Coast urge the same objection with greater immediacy, for the Los Angeles and San Francisco licenses they wish to challenge would have expired, in the ordinary course, over a year and a half ago, while the Memphis license of interest to New South had an August 1, 1982, expiration date. We therefore describe the objection in the context of the Future and Gold Coast appeals.
 
 
 12
 Future Broadcasting, Inc. and Gold Coast Broadcasting, Inc.
 
 
 13
 As earlier stated, the three RKO California licenses of interest to Future and Gold Coast were scheduled to expire December 1, 1980. Under the FCC's rules, unless otherwise directed, RKO was required to file renewal applications for these stations by August 1, 1980, see 47 C.F.R. § 73.3539(a) (1981); competing applications would have been timely between August 1, 1980, and November 1, 1980. See id. § 73.3516(e). In its June 6, 1980, decision declaring RKO unfit to hold the Boston television license, however, the FCC extended from August 1, 1980, to October 1, 1980, RKO's renewal filing deadline for the three California licenses and further announced that competing applications would not be accepted for filing until after the filing of RKO's renewal applications. 78 F.C.C.2d at 118.
 
 
 14
 Nonetheless, in anticipation of October 1 filings by RKO, Future tendered to the Commission applications for the Los Angeles frequencies on September 24, and Gold Coast tendered an application for the San Francisco station on September 30. That same day, just one day short of the October 1 extended deadline for RKO's renewal applications, the FCC issued a press release announcing, effective immediately, the Commission's decision "to reopen the (1977-1979) renewal applications for RKO's 13 licenses which were conditionally granted pending the outcome of the Boston proceeding," and its direction that "RKO not file new renewal applications for its 13 stations until further order of the Commission." FCC Report No. 15948, Joint Appendix (J.A.) 180-82. The opinion and order under review, released November 26, 1980, present the full text of the Commission decision previewed in the September 30 press release.
 
 
 15
 Future and Gold Coast assert that their appeals graphically demonstrate the irony of the Commission's action. They underscore that RKO, a licensee "operating under a cloud for many years," 82 F.C.C.2d at 309, has managed to retain its licenses free from competitive challenges long beyond the period during which, in the absence of any "cloud," RKO would have had to meet such challenges. They urge us to block further extension of the time they have waited by directing the FCC (1) to order RKO to file forthwith the renewal applications for the three California stations that RKO was prepared to file on October 1, 1980, (2) to instruct the Commission to "accept( ) for filing nunc pro tunc" the September 24, 1980, Future, and September 30, 1980, Gold Coast applications, and (3) thereupon to consolidate the Future and Gold Coast applications "for hearing in comparative proceedings with the RKO renewal applications with which they are mutually exclusive." Joint Reply Brief for Appellants Future Broadcasting, Inc. and Gold Coast Broadcasting, Inc. at 24; Joint Supplemental Reply for Appellants Future Broadcasting, Inc. and Gold Coast Broadcasting, Inc. at 8-9.
 
 
 16
 National Citizens Committee for Broadcasting
 
 
 17
 A coalition of seven citizens groups, here collectively referred to as National Citizens Committee for Broadcasting (NCCB),[8] representing members residing in all of the cities where RKO stations are located, has intervened in support of appellants. See New South Media Corp. v. FCC, 644 F.2d 37 (D.C.Cir.1981) (granting NCCB, over the FCC's opposition, leave to intervene). NCCB asserts that the coalition supports media diversity and programming responsive to community needs and sought to advance through comments filed with the FCC the goal of "expeditiously mak(ing the RKO) frequencies available for new applicants, particularly those with significant minority ownership and participation." Brief for Intervenors NCCB, et al. at 6.
 
 
 18
 NCCB's argument differs from Future's and Gold Coast's in one major respect. In lieu of turning the clock back to the fall of 1980 in a manner that would position Future and Gold Coast alone to challenge RKO with respect to the three California licenses, NCCB urges that the Commission now open the way for the prompt filing by any interested party of a competing application against any of the thirteen stations.[9] Further, NCCB clarifies that it does not challenge, nor does it understand Future or Gold Coast to challenge, the November 26, 1980, order to the extent that the order consolidates into one proceeding consideration of RKO's qualifications at the thirteen stations, including as part of that consideration station-by-station presentation by RKO of mitigating evidence. Instead, NCCB challenges the total separateness of the consolidated proceeding and the FCC's refusal to accept competing applications for any of the thirteen stations prior to the conclusion of the proceeding. NCCB observes that the limited basis on which this court affirmed the FCC's decision disqualifying RKO for the Boston television license reduces the prospect of a swift, simple, uniform ruling on RKO's qualification elsewhere and renders more likely the need for a comparative assessment of RKO's merit or the lack thereof. But if potential competitors are not allowed to file applications until the conclusion of the consolidated hearing, NCCB contends, what is done in that hearing may well have to be rerun when, eventually, the Commission does make a comparison of RKO's qualifications against those of others.[10]
 
 The Commission
 
 19
 The FCC regards the procedure it has selected as a reasonable method of ordering Commission business. If competing applicants for any of the thirteen RKO facilities were invited to participate now, the FCC argues, then even if RKO's basic qualifications as a licensee were set as the first issue to be aired, a "procedural nightmare" would ensue: "Lawyers for numerous would-be broadcasters would have the right to cross-examine witnesses, object to documents, participate in arguments, enlarge the issues ...." Supplemental Brief of Appellee at 6.
 
 
 20
 Further, the FCC points out, potential competing applicants, as well as RKO, have been on notice for over a decade that the Commission anticipated revisiting renewals after it made its findings in the Boston proceeding.[11] Therefore, the Commission asserts, the reopenings, although they require would-be rival applicants to wait, should not have occasioned surprise; indeed, they were necessary to reinforce the integrity of the Commission's processes. 82 F.C.C.2d at 296. Moreover, the FCC observes, despite opportunities to do so, competing applicants did not come forward prior to the most recent renewals of RKO's licenses for the thirteen stations. In contrast, the Commission's own Broadcast Bureau had cautioned:
 
 
 21
 (W)hile there may be a temptation to avoid the protracted litigation which will surely result from the filing of competing applications, the Commission must not act inconsistently with the competitive spur which the Communications Act provides. Therefore, whatever procedure is adopted should be done with due respect for the rights of those who have expressed a desire to file competing applications.
 
 
 22
 J.A. 136 (Broadcast Bureau comments on impact of WNAC-TV decision on other stations licensed to RKO, July 7, 1980); see 82 F.C.C.2d at 306.
 
 
 23
 RKO General, Inc.
 
 
 24
 RKO, as intervenor, supports the Commission's decision that, in the public interest, "RKO's basic status (should) be determined (in a proceeding directed solely to that determination) before RKO would again be exposed to potential competition." Brief of Intervenor RKO General, Inc. at 17. RKO stresses the Commission's "broad discretion ... to order its processes efficiently," Supplemental Brief of Intervenor RKO General, Inc. at 5, and points out that "(i)t would be senseless to attempt to resolve the common questions of law, policy, and fact (relevant to RKO's basic qualifications to retain broadcast licenses) in thirteen separate proceedings." Id. at 7 (footnote omitted).
 
 
 25
 But as RKO acknowledges, Future and Gold Coast do not seek thirteen separate proceedings addressing the same issues. Rather, they concede the reasonableness of Commission adjudication of RKO's basic qualifications "in a single hearing segment" of a larger proceeding in which their competing applications would be entertained in a second phase. Joint Supplemental Brief for Appellants Future Broadcasting, Inc. and Gold Coast Broadcasting, Inc. at 9. In both phases, Future and Gold Coast maintain, competing applicants should be allowed to participate "in their role as competing applicants." Id. at 10 (emphasis in original).
 
 
 26
 RKO usefully clarifies that "(t)here are really only two questions presented by this appeal: (1) whether the Commission has the power to condition license renewals and subsequently to revisit those renewals if circumstances warrant; and (2) whether the Commission abused that power in this case." Supplemental Brief of Intervenor RKO General, Inc. at 4. RKO further observes that Future and Gold Coast do not seriously challenge Commission authority to condition and subsequently revisit license renewals as a general matter. Id. at 4 n.2. The nub of this controversy, therefore, is whether the FCC has settled on a reasonable course for this case in reopening old renewals and scheduling them for determination in an entirely separate proceeding, while in the interim potential competitors are kept waiting.
 
 II.
 A.
 
 27
 The Supreme Court's "towering" decision in Ashbacker Radio Corp. v. FCC, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945), has served as this court's beacon in reviewing the Commission's treatment of those who would compete for a broadcast license. See Citizens Communications Center v. FCC, 447 F.2d 1201, 1210-11 (D.C.Cir.1971), clarified, 463 F.2d 822 (D.C.Cir.1972). In Ashbacker the Court held that the FCC dishonored the "full hearing" requirement now stated in 47 U.S.C. § 309(e)[12] when it failed to conduct a comparative hearing to determine which of two mutually exclusive broadcast applications would best serve the public interest. Instead of comparing the applications before granting a license, the Commission, on the same day, granted one of them without a hearing and designated the other for a hearing. Since the license facility had already been granted, the hearing that the Commission ordered would have become "in substance one for the revocation or modification of an outstanding license," and the applicant would have been saddled with the burden of attempting "to displace an established broadcaster." 326 U.S. at 332, 333, 66 S.Ct. at 150, 151. Ashbacker involved original applications, but its comparative hearing instruction for Commission administration of section 309(e) has long governed renewal proceedings in which rival applicants challenge incumbents. See Citizens Communications Center, 447 F.2d at 1211-12 & n.33.
 
 
 28
 In a series of decisions, this court has sought to guard "the spirit of the Ashbacker doctrine," see Community Broadcasting Co. v. FCC, 274 F.2d 753, 759 (D.C.Cir.1960), and to preserve "comparative considerations" as a prime factor in broadcast licensing decisions. See Citizens Communications Center, 447 F.2d at 1207 (quoting NBC, Inc. v. United States, 319 U.S. 190, 217, 63 S.Ct. 997, 1009, 87 L.Ed. 1344 (1943) ("Since the very inception of federal regulation (of broadcasting), comparative considerations as to the services to be rendered have governed the application of the standard of 'public interest, convenience, or necessity.' ") (citation omitted)). In particular, the court has scrutinized closely Commission contentions concerning the need for new or continued service, or for expeditious administrative proceedings, to assure that FCC action does not stray far from "(t)he basic teaching of ... Ashbacker ... that comparative consideration by the Commission and competition between the applicants is the process most likely to serve the public." Community Broadcasting Co., 274 F.2d at 758-59. See also Kessler v. FCC, 326 F.2d 673, 686-88 (D.C.Cir.1963). Similarly, the court has attempted close review of Commission policy regarding "renewal expectancy" to ascertain whether the FCC is according incumbent licensees undue protection to the detriment of the public. See, e.g., Central Florida Enterprises, Inc. v. FCC, 683 F.2d 503 (D.C.Cir.1982).
 
 
 29
 Consonant with Ashbacker and its progeny, and the statutory "full hearing" requirement that court precedent serves, our close consideration of the Commission order here under review leads ineluctably to this conclusion: The FCC has not adequately accounted for an action destined to prolong by months and in some cases even years licensee RKO's immunity from competitive challenge and comparative evaluation.
 
 B.
 
 30
 RKO's 1977-1979 license renewals, as earlier noted, were conditioned on "whatever action, if any, the Commission may deem appropriate as a result of ... the outcome of (the Boston case)." 82 F.C.C.2d at 295 n.14. RKO was thus on notice that these renewals might terminate short of three years based on "final action" in the Boston proceeding. Id. However, in the order under review, the FCC invoked the condition placed on the 1977-1979 license renewals not to abbreviate, but to extend the three-year terms.
 
 
 31
 Two lines of decision are featured in the briefs: the FCC and RKO rely on Committee for Open Media v. FCC, 543 F.2d 861 (D.C.Cir.1976), aff'g Chronicle Broadcasting Co., 44 F.C.C.2d 717 (1974); Future, Gold Coast, and NCCB cite Carlisle Broadcasting Associates, 59 F.C.C.2d 885 (1976), as the decision most closely in point. We find Carlisle the more relevant guide.
 
 
 32
 Committee for Open Media concerned a renewal application designated for an evidentiary hearing in March 1969, less than four months after the prior license had expired. The hearing examiner issued an initial decision in favor of the application some two years later, in March 1971, but the Commission's decision renewing the license did not issue until May 1973. This court agreed that, in these circumstances, the FCC was not obliged to require a new submission after three years; rather, the Commission could "continue( ) the license in effect until the renewal proceeding ha(d) run its course," at which time the FCC could "renew( ) the license, if at all, for some ensuing period not exceeding three years." 543 F.2d at 863.[13]
 
 
 33
 "(N)o competing application was ever filed," nor did any potential competitor ever inform the Commission of a "definite intention" to file, while the license renewal proceeding at issue in Committee for Open Media "remained in a hearing posture." Id. at 874 & n.85. Therefore the court had no occasion to resolve the question whether, had competing applicants tried to intrude at the three-year mark, the Commission could have staved them off. See id. at 872 (noting appellant's contention that the Commission's ruling, if applied as a bar to competitors, would "subvert( ) the statutory scheme of license regulation" by unduly immunizing incumbent licensees from challenge). While leaving the question open, the court summarized the conflicting considerations. The court observed first that "without a moratorium on competing applications while a renewal hearing progresses, a final resolution on renewal might be severely hampered." Id. at 873. On the other hand, the court stated, if the Commission barred competitors during the full-run of protracted renewal proceedings, a station's audience would be deprived "perhaps for a long time, of potential license competition that normally propels a licensee to better broadcasting." Id.
 
 
 34
 In Carlisle Broadcasting Associates, the Commission distinguished between (1) the Committee for Open Media, renewal application in hearing status situation, which entailed an ongoing proceeding that could be disrupted or protracted by the mid-stream entrance of competing applicants, and (2) a renewal application in deferred status. The incumbent's license renewal in Carlisle had been deferred (neither granted, denied, nor designated for hearing) pending the outcome of another proceeding in which the licensee's basic qualifications were at issue. 59 F.C.C.2d at 885 n.1, 889 n.16.
 
 
 35
 When three years have passed in a deferred renewal situation, the FCC ruled in Carlisle, competing applications will be entertained. Since there is no ongoing proceeding to disrupt or protract when a renewal application is simply deferred, other considerations control. To keep competitors at bay in these circumstances, the Commission said, "could serve to insulate a broadcaster from effective competition at precisely the time when the public interest might favor the spur of competition or an alternative licensee." Id. at 889. It would be anomalous, the Commission's opinion in Carlisle suggests, to afford "greater protection to licensees whose applications remain in deferred status than to licensees who, by virtue of receiving timely renewal grants, become vulnerable to challenge every three years." Id. Finally, to hold off challengers when a renewal has been deferred for three years, the Commission believed, "would appear to create a property right in (a) frequency beyond the contemplation of both Congress and the courts." Id. at 890 (footnotes omitted).
 
 
 36
 On the surface there is a resemblance between this case and that of a renewal application that remains in hearing past the expiration of a license term, for the Commission, shortly before three of the licenses in question were due to expire, did designate all thirteen 1977-1979 RKO license renewals for an evidentiary hearing. See supra pp. 709-710, 711-712. But the FCC specified no time for the designated hearing, indeed the Commission announced that it could set no time until a date then distant when "all court appeals" in the Boston case would be completed. 82 F.C.C.2d at 318. That time has now arrived. However, in the interim, all but one of the thirteen license renewals have run well beyond three years, with no renewal hearing ongoing at the Commission, no evidence-taking underway, no proceeding in midstream or even launched.
 
 
 37
 In fact then, if not in form, the extended "conditional renewals" in this case are like the renewal deferred for three years in Carlisle. We discern no practical difference in the two situations, nor has the Commission essayed any meaningful distinction between them.[14] In contradistinction to Committee for Open Media, where the renewal indeed was in hearing throughout most of the license term and past its expiration, in this case, as in Carlisle, nothing has been heard. Therefore the entrance now of competing applicants would require no reopening of "matters once decided," no "relitigation" of issues already aired. See 59 F.C.C.2d at 889 n.15.
 
 C.
 
 38
 By extending RKO's conditionally granted licenses and deferring competing applications in the manner described, the Commission's order strays from the path Ashbacker marked and collides with the agency's own decision and reasoning in Carlisle. We next consider whether the order can be salvaged on the bases the Commission urges: efficient ordering of FCC processes; preserving the integrity of conditioned renewals; removing the "cloud" over RKO's stations. See 82 F.C.C.2d at 296, 307-10.
 
 
 39
 The order under review was released at the end of 1980. At that time, the Commission may have projected that a separate, noncomparative hearing on the reopened renewals could eventuate in a clear-cut determination that RKO was unqualified to hold any license, see 82 F.C.C.2d at 301, and would thus efficiently clear the field for potential competitors. As earlier explained, see supra pp. 709-710, 712, 713 n.11, that projection, if indeed the Commission made it,[15] should have been severely shaken by the "narrow basis" on which this court, at the end of 1981, upheld the FCC's decision denying renewal of RKO's Boston television license. See RKO General, 670 F.2d at 218, 236-37. At this juncture, it appears likely that ground covered in the noncomparative hearing the Commission has ordered would be retread in eventual comparative proceedings and that appeals from the FCC's decision following the discrete, noncomparative hearing would introduce further delay. See supra pp. 712-713 & n.10. In sum, even if competing applications could be subordinated to efficiency concerns,[16] we would have reason to doubt that the FCC has charted an efficient, resource-conserving course.
 
 
 40
 Had the FCC in fact reexamined RKO's 1977-1979 renewals within three years of the conditioned grants, we could understand how revisiting the renewals would serve to preserve the integrity of the Commission's conditional action. But we are at a loss to comprehend how the Commission demonstrates to the industry it regulates that a condition is a meaningful check when the condition operates, as it does here, to keep alive in 1982, and still immune from competitive challenge, licenses that, absent the Commission's announced revisits, would have expired in 1980.
 
 
 41
 As to the "cloud" hanging over RKO, to the extent that it gathered as a result of RKO's misconduct, we do not fully grasp the Commission's solicitude. Moreover, the FCC's approach has clouded the potential competitors' way. The Commission has placed a freeze on their applications, and it is unclear when the freeze would thaw.
 
 
 42
 The FCC has postulated as an outcome of the designated noncomparative hearing a decision that RKO is "entitled to unconditionally renewed licenses," followed by transfer of those licenses to third parties who would not be subjected to comparative measurement. See 82 F.C.C.2d at 296, 308, 310; 47 U.S.C. § 310(d) ("in acting (on transfer applications) the Commission may not consider whether the public interest ... might be (better) served by the transfer ... of the ... license to a person other than the proposed transferee") (emphasis added). We note that this court has looked askance at a set of Commission decisions, the first one extending a construction permit term, the second, in the face of known competition for the station, authorizing a transfer to a qualified, but not necessarily best qualified, third party. See MG-TV Broadcasting Co. v. FCC, 408 F.2d 1257, 1262-64 (D.C.Cir.1968). The "cloud" the FCC perceives, in short, appears to have obscured the Commission's view of the detrimental impact of its order on would-be competitors for RKO's stations who seek only a fair, and not unduly delayed, opportunity to prove, in a comparative contest, that they are best qualified to serve the public interest.Conclusion
 
 
 43
 For the reasons stated, we vacate the Commission's order to the extent that it suspends the right to file competing applications and remand this matter to the Commission for such further proceedings, consistent with this opinion, as the Commission shall prescribe.
 
 
 44
 So ordered.
 
 
 
 [1]
 See Ashbacker Radio Corp. v. FCC, 326 U.S. 327, 328 n.1, 66 S.Ct. 148, 149 n.1, 90 L.Ed. 108 (1945) (construction permit applications are in substance applications for station licenses)
 
 
 [2]
 47 U.S.C. § 307(d) provides in relevant part:
 No license granted for the operation of a broadcasting station shall be for a longer term than three years .... Upon the expiration of any license, upon application therefor, a renewal of such license may be granted from time to time for a term ... not to exceed three years ....
 
 
 [3]
 Renewal applications "shall be filed not later than the first day of the fourth full calendar month prior to the expiration date of the license sought to be renewed." 47 C.F.R. § 73.3539(a) (1981). Applications for a construction permit for a new broadcast station mutually exclusive with a renewal application must be "tendered for filing by the end of the first day of the last full calendar month of the expiring license term." Id. § 73.3516(e)
 
 
 [4]
 On January 27, 1982, we directed the parties to submit supplemental briefs on the relevance of our December 4, 1981, decision in RKO General to this appeal
 
 
 [5]
 The thirteen stations and the dates for expiration of their current licenses are:
 KFRC (San Francisco) and KHJ and KRTH-FM (Los Angeles)-Dec. 1, 1980
 WRKO and WROR-FM (Boston)-April 1, 1981
 WOR and WXLO-FM (New York City)-June 1, 1981
 WGMS (Bethesda, Md.) and WGMS-FM (Washington, D. C.)-Oct. 1, 1981
 WAXY-FM (Ft. Lauderdale, Fla.)-Feb. 1, 1982
 WHBQ and WHBQ-TV (Memphis)-Aug. 1, 1982
 WFYR-FM (Chicago)-Dec. 1, 1982
 
 
 [6]
 In addition to appealing from the FCC's November 26, 1980, decision, New South, by petition for review, specifically challenged the FCC's footnote refusal in that decision to commence revocation proceedings concerning the Memphis television station, WHBQ-TV. 82 F.C.C.2d at 307 n.71
 
 
 [7]
 The court noted, with specific reference to the instant appeal:
 We express no view, in light of the pending appeal ..., as to whether a separate proceeding is the appropriate format for the introduction of such evidence or whether the matter should be addressed in the context of license renewal proceedings.... We do hold that it is appropriate to treat RKO's New York City and Los Angeles licenses in the same manner as the licenses for RKO's other thirteen stations.
 670 F.2d at 237 n.48 (citation omitted).
 
 
 [8]
 The seven groups are National Citizens Committee for Broadcasting, National Association for Better Broadcasting, Black Citizens for Fair Media, Committee for Community Access, Chinese for Affirmative Action, Metropolitan Washington Coalition for Latino Radio, Citizens for Media Change
 
 
 [9]
 In comments to the FCC and again in its briefs on appeal, NCCB proposed that the Commission waive the old cut-off dates for applications competing with the reopened renewal applications and establish new deadlines. See J.A. 147 (Reply Comments of NCCB at 20); Brief for Intervenors NCCB, et al. at 13-14 & n.7; Supplemental Brief for Intervenors NCCB, et al. at 6 n.4
 
 
 [10]
 NCCB also notes the protraction that might be occasioned by appeals taken from any eventual determination in a consolidated proceeding that does not include as a second stage station-by-station comparative hearings. Supplemental Brief for Intervenors NCCB, et al. at 7 n.6
 
 
 [11]
 The FCC recognizes, however, that this court's December 4, 1981, decision in RKO General significantly diminishes the issue preclusive (collateral estoppel) effect once projected for the Commission's decision disqualifying RKO in the Boston proceedings. Compare 82 F.C.C.2d at 311, 312-18, with Supplemental Brief of Appellee at 4 n.6
 
 
 [12]
 Section 309(e) today reads in pertinent part:
 If, in the case of any application to which subsection (a) of this section applies (subsection (a) instructs the Commission to determine whether granting indicated applications, including broadcast license applications, would serve "the public interest, convenience, and necessity"), ... the Commission for any reason is unable to make the (public interest, convenience, and necessity) finding ..., it shall formally designate the application for hearing on the ground or reasons then obtaining .... Any hearing subsequently held upon such application shall be a full hearing in which the applicant and all other parties in interest shall be permitted to participate.
 
 
 [13]
 The FCC relied on the specification in 47 U.S.C. § 307(d) that "(p) ending any hearing and final decision on (a renewal) application ..., the Commission shall continue such license in effect." See also 5 U.S.C. § 558(c); 47 C.F.R. § 1.62 (1981)
 
 
 [14]
 The FCC's briefs do not cite Carlisle ; the order under review simply footnotes Carlisle for the statement that a "different rule obtains when action on (a renewal) application has been deferred rather than put in hearing status." 82 F.C.C.2d at 309 n.76
 
 
 [15]
 Even before this court's RKO General decision, which drastically curtailed the issue preclusive effect of the Boston disqualification, the Commission planned to proceed case-by-case as to each reopened renewal, "focusing on the past operation of the particular station." Brief of Appellee at 20
 
 
 [16]
 But cf. Kessler, 326 F.2d at 687-88 (complexity of comparative evaluations does not justify avoiding them)